1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                       **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   HARRY D'AGOSTIN,                              CASE NO. 04CV2051-LAB (JMA)

12                               Petitioner,       **ORDER ADOPTING SECOND REPORT AND RECOMMENDATION; AND**
13          vs.                                    **DENYING PETITION FOR WRIT OF HABEAS CORPUS**

14   ROBERT HERNANDEZ, Warden,

                                  Respondent.
15

16          Petitioner was convicted in California state court on April 18, 1974 of two counts of first-

17   degree murder and one count of attempted murder.  He was sentenced to seven years to life in prison

18   with the possibility of parole. On September 6, 2002, he was denied parole at a parole suitability

19   hearing.  After pursuing his state habeas remedies, Petitioner filed his petition in federal court for writ

20   of habeas corpus on June 1, 2004.  In addition to other bases for issuance of the writ, Petitioner

21   contended that denial of parole was a violation of the U.S. Constitution's prohibition of *ex post facto*

22   laws.  The matter was referred to Magistrate Judge Jan Adler for a report and recommendation

23   pursuant to 28 U.S.C. § 636.  Judge Adler recommended that the petition be denied, and Petitioner

24   objected.

25          After this, the Court granted Petitioner's request to stay further proceedings pending the Ninth

26   Circuit's decision in *Irons v. Warden*, on appeal from the Eastern District of California's decision

27   published at 358 F. Supp.2d 936 (E.D.Cal. 2004).  *Irons* dealt with the issue of repeated denials of

28   parole on the basis of an inmate's commitment offense, an issue Petitioner also raised.  On January

23, 2006, the Court, noting that *Irons* had been referred for settlement and concluding that a decision by the Ninth Circuit was unlikely, lifted the stay. The Court then overruled Petitioner's objections to the first report and recommendations, except as to Petitioner's *ex post facto* argument. The Court remanded the matter to Judge Adler for a second report and recommendation so that the *ex post facto* issues could be more fully addressed. All theories of relief have been ruled on except Petitioner's *ex post facto* argument.

On May 3, 2006, Judge Adler issued his second report and recommendation (the "R&R"), addressing the *ex post facto* issue. Petitioner filed objections. Respondent filed no reply. Thereafter, it became apparent the Ninth Circuit would after all issue an opinion in *Irons*. Its initial opinion was issued on March 6, 2007 and published at 479 F.3d 658, but was then amended on denial of rehearing by ___ F.3d ____, 2007 WL 2027359 (July 13, 2007). The newly-issued opinion in *Irons* does not counsel reconsideration of the Court's earlier ruling. *See id.*, slip op. at *6 (reversing the district court's order granting petitioner's habeas corpus petition).

## I.   Legal Standards

In reviewing a Magistrate Judge's report and recommendation, the Court "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Under this statute, "the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise*." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Because Petitioner filed his petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies. AEDPA permits a federal court to grant a petition of a state prisoner whose claims were adjudicated on the merits in state court, only if the state court decision was contrary to clearly established federal law, or involved an unreasonable application of the facts to such law. Specifically, the Court may grant habeas relief where a state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court's decision can be "contrary to" federal law if it fails to apply the correct controlling Supreme Court authority or comes to a different conclusion when presented with a case involving materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The Court may grant habeas relief under AEDPA's "clearly erroneous" provision only if the state court's application of federal law is objectively unreasonable.  *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).  An "*unreasonable* application of federal law is different from an *incorrect* application of federal law," and the Court may not substitute its own judgment for that of the state court.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (citations omitted).

Alleged errors in the application of state law are not cognizable in federal habeas corpus proceedings.  *Little v. Crawford*, 449 F.3d 1075, 1082 n.6 (9th Cir. 2006).  Under AEDPA, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied.  *Clark*, 331 F.3d at 1069 (9th Cir. 2003).

"[N]ot every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited."  *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *California Dept. of Corrections v. Morales*, 514 U.S. 499, 508–9 (1995)).  "The question is a matter of degree."  *Garner* at 250 (citing *Morales* at 509) (internal quotation marks and further citations omitted).  In determining whether the retroactive application of a state law constitutes an *ex post facto* violation, the controlling inquiry is "whether retroactive application of the change in state law created a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Garner* at 250 (quoting *Morales* at 509) (internal quotation marks omitted).

**II.    Request for Judicial Notice**

Petitioner requests that the Court take judicial notice of certain published case authorities.  (Request for Judicial Notice, filed Aug. 30, 2006; *see also* Notice of Further Proceedings and Decisions, filed Oct. 20, 2006 (updating citations and references to cases where judicial notice was requested)).  In addition, Petitioner has drawn the Court's attention to other legal rulings in other cases by filing notices bringing these cases to the Court's attention.  (*See* pleadings filed March 29, 2006; October 20, 2006; March 19, 2007.)

/ / /

1   While the Court can take notice of these rulings, *United States v. Wilson*, 631 F.2d 118, 119–20

2   (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the

3   records of an inferior court in other cases."), they are, at most, persuasive authority.   This is

4   particularly true after the Ninth Circuit's recent ruling in *Irons*, whose holding is both binding and

5   contradictory to the holdings of most of the rulings which are the subject of Petitioner's judicial notice

6   request.  The Court will therefore treat Petitioner's pleadings bringing these authorities to the Court's

7   attention as supplemental briefing.  Because judicial notice is thus unnecessary, the request for judicial

8   notice is **DENIED AS MOOT**.  *See Ventura Mobilehome Communities Owners Ass'n v. City of San*

9   *Buenaventura*, 371 F.3d 1046, 1052 n.5 (9th Cir. 2004) (denying request for judicial notice of rulings

10  by other courts in unrelated cases, where rulings had no clear relevance to the case at bar and did not

11  alter the court's determination of the case).

12  **III.    Petitioner's Objections**

13  At this stage of the proceedings, the only remaining theory of relief is Petitioner's contention

14  that he was denied parole in violation of the U.S. Constitution's prohibition on *ex post facto* laws.

15  Petitioner's objections are essentially a repetition of the *ex post facto* arguments raised in his petition.

16  The Court has reviewed the R&R de novo and concludes that Petitioner's objections lack merit.

17  Petitioner contends that, had the ISL continued in force, he would have certainly been released

18  from custody by now, but under the DSL he is "forever *precluded*" from being released.  (*See, e.g.*,

19  Obj. at 3:19–21, 7:22–25, 9:12–14, 10:5–6.)  In support of this argument, Petitioner provides no

20  analysis, but simply refers the Court to Exhibits D (Resolution of the Adult Authority Regarding

21  Contingency Parole Dates, Adopted Jan. 18, 1972) and E (Chairman's Directive No. 75/30, Adopted

22  September 2, 1975), respectively, which were attached to his petition.

23  Having reviewed the record, the Court cannot conclude either that Petitioner would already

24  have been entitled to be released before, or that he is forever precluded from being released.  Rather,

25  it appears the criteria for release on parole are similar under the ISL and DSL.  *In re Stanworth*, 33

26  Cal.3d 176, 183 (1982) (holding that, under both the ISL and DSL, however, "parole considerations,

27  philosophically, were the same for all inmates," and under both, a life prisoner first had to be found

28  suitable for parole before a parole date was set).  Furthermore, under the ISL as it existed when

1  Petitioner committed his offense, the Adult Authority (the parole-granting authority at that time)

2  exercised "almost unlimited discretion" by a person acting unilaterally whose decision was based on

3  informal criteria[1] and who was not required to justify his decision. *In re Seabock*, 140 Cal.App.3d 29,

4  34 (1983) (citations omitted). An inmate "had no right to a parole at any fixed time, or at all. . . ." *Id.*

5  Under the ISL, the Adult Authority's individualized consideration of each inmate meant that release

6  on parole could not be predicted. *Stanworth*, 33 Cal.3d at 182.

7        Petitioner therefore cannot show with any assurance, or indeed with any degree of probability,

8  he would have received parole under the old system. *See Johnson v. Gomez*, 92 F.3d 964, 968 (9th Cir.

9  1996). Under *Garner*, Petitioner cannot show an *ex post facto* violation.

10        Petitioner, in the alternative, seeks relief on state law grounds. (Obj. at 5:16–18 (". . . if this

11  claim does not succeed on an ex post facto basis, it must succeed on statutory and regulatory non-

12  retroactivity grounds.") As discussed above, state law cannot support this Court's issuance of the writ.

13  **III.**     **Conclusion and Order**

14        For these reasons, Petitioner's objections are **OVERRULED** and the R&R is hereby

15  **ADOPTED**. The writ of habeas corpus is **DENIED**.

16        **IT IS SO ORDERED**.

17  DATED: August 29, 2007

18

19  **HONORABLE LARRY ALAN BURNS**
United States District Judge

20

21

22

23

24

25

26

27  [1]  Petitioner appears to believe the informal ISL criteria were a good deal more inflexible and binding

28  on the Adult Authority than in fact they were, and that they would have guaranteed his release on parole. The Court, however, defers to the California Supreme Court's own interpretations of California's parole laws. *Lindsey v. Washington*, 301 U.S. 397, 400 (1937).